**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**In re:**

| | |
|---|---|
| **METALMITE CORPORATION,** | **Case No. 24-40072-lsg** |
| | **Chapter 11, Subchapter V** |
| **Debtor.** | **Hon. Lisa S. Gretchko** |

# ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION UNDER 11 U.S.C. § 1191(a)

Metalmite Corporation ("Debtor"), as Debtor and Debtor in Possession, filed the Debtor's Plan of Reorganization ("Plan"; ECF No. 124) pursuant to the Amended Order Establishing Deadlines and Procedures in the Case of a Small Business Debtor Who has Elected to Have Subchapter V of Chapter 11 Apply ("Amended Scheduling Order"; ECF No. 119). The Plan and notice of the deadline for objections thereto were served on all parties on the Debtor's matrix. The Court held a hearing on confirmation of the Plan on July 19, 2024 ("July Confirmation Hearing"), a status conference on August 19, 2024 ("Status Conference"), and an adjourned hearing on confirmation of the Plan on September 27, 2024 ("Adjourned Confirmation Hearing"). Based on the records and files in this case and the statements made at the July Confirmation Hearing, the Status Conference and the Adjourned Confirmation Hearing, the Court is advised in the premises.

**NOW, THEREFORE**, the Court hereby makes the following findings of fact:

## FINDINGS OF FACT

A. According to the Certificate of Service (ECF No. 125), the Plan and the Amended Scheduling Order containing notice of: (i) the July Confirmation Hearing, (ii) the deadline for voting on the Plan, and (iii) the deadline for filing objections to confirmation of the Plan, were served in compliance with Fed.R.Bankr.P. 2002(b). All parties that participated in the July Confirmation Hearing and that are entitled to notice pursuant to the Court's electronic noticing system had notice of the Status Conference and the Adjourned Confirmation Hearing. No other or further notice is required.

B. No objection to the Plan was filed. The Verified Ballot Summary Report pertaining to the Plan ("Ballot Report"; ECF No. 130) was filed with the Court on July 16, 2024 and it reflects that all classes voted to accept the Plan.

C. The July Confirmation Hearing was held on July 19, 2024, the Status Conference was conducted on August 19, 2024, and the Adjourned Confirmation Hearing was held on September 27, 2024. Counsel for the Debtor, Thomas Gendich, Ann Marie Gendich, their counsel, counsel for Oxford Bank ("Oxford"), counsel for the United States Trustee and the Subchapter V Trustee (collectively, the "Parties") appeared at the Adjourned Confirmation Hearing and, pursuant to E.D. Mich. LBR 3020-1, each of the Parties present consented to dispense with an evidentiary hearing

on Plan confirmation. Based on the lack of any filed objection to the Plan and the consent of all Parties present at the Adjourned Confirmation Hearing, the Court, pursuant to E.D. Mich. LBR 3020-1, finds that each of the elements necessary for confirmation under 11 U.S.C. § 1129(a) has been established. On October 7, 2024, a stipulation ("Stipulation"; ECF No. 144) among counsel for the Debtor, counsel for Thomas and Ann Marie Gendich, counsel for Oxford, counsel for the United States Trustee, counsel for Leaf Capital Funding, LLC ("Leaf Capital"), counsel for Automation Alley, counsel for Onodi Tool and Engineering Company, and the Subchapter V Trustee was filed consenting to the terms of this Order.

D. The Court has considered the Plan, the Ballot Report, the Detailed Projections filed on August 16, 2024 (ECF No. 137), the statements made on the record (at the July Confirmation Hearing, the Status Conference, and the Adjourned Confirmation Hearing), the Stipulation, the modifications made to the Plan as set forth in this Order, and other pertinent pleadings. Based on E.D. Mich. LBR 3020-1, the Court has determined that the applicable requirements for confirmation set forth in 11 U.S.C. § 1191(a) have been satisfied. The Court is advised in the premises.

**NOW, THEREFORE**, **IT IS HEREBY ORDERED** that:

1. The Plan, as modified in this Order, is confirmed under 11 U.S.C. § 1191(a).

2. Pursuant to 11 U.S.C. § 1141(a), the provisions of the Plan as modified by this Order, as of the Effective Date, shall bind the Debtor, any Creditor, and Debtor's equity security holders, whether or not the claim of such interest holder or creditor is impaired under the Plan and whether such creditor or interest holder has accepted the Plan.

3. Except as otherwise set forth in the Plan or this Order, all of the Debtor's prepetition executory contracts and unexpired leases that have not been previously assumed or rejected are hereby rejected.

4. The final two paragraphs of section 1.4 on page 6 of the Plan are deleted and replaced with the following:

> The current management team consists of Thomas as president and chief executive officer, Jason Klassen, director of manufacturing, John Coulter as shop manager, and Amy Reed as the chief restructuring officer.
>
> a. Thomas has worked at the Debtor for twenty-eight years in various machine shop duties and is the current president, chief executive officer and sole director. Thomas' current annual salary is $156,000. Thomas's monthly healthcare premiums for himself and his family in the amount of $2,339.18 are paid by the Debtor. Thomas also has an executive car allowance in the amount of $870 per month and a monthly cell phone allowance in the amount of $493.69.

b. Jason Klassen has worked at the Debtor for twenty-four years and is the current director of manufacturing overseeing the equipment programming needs in the plant. Mr. Klassen has twenty-eight years of machining experience. Mr. Klassen receives an annual salary of $119,810 and receives monthly health care benefits in the amount of $1,680.93.

c. John Coulter has worked at the Debtor for eight years and is the current shop manager overseeing the production and completion of all jobs on the shop floor. Mr. Coulter has twenty-four years of machining experience. Mr. Coulter is compensated on an hourly basis. His current hourly rate is $33.00. Mr. Coulter also receives monthly health care benefits in the amount of $1,712.99, holiday benefits and paid time off.

d. Amy Reed is the Debtor's current chief restructuring officer and has over thirty-five years of business administration and general machine shop office experience. Ms. Reed is the owner and operator of Casemer Tool in Oxford Michigan - a customer and vendor of the Debtor. Ms. Reed receives no compensation in her role as the Debtor's chief restructuring officer.

5. The second to last sentence of the fourth paragraph of section 1.5 of the Plan is deleted and replaced with the following:

In light of the Gendichs' personal bankruptcy filing, the Debtor has estimated that it will receive a distribution in the amount of $30,097.08 on the shareholder loan due from the Gendichs through their plan payments.

6. Section 1.6.2.2 of the Plan is deleted and replaced with the following:

i. Prior to the Petition Date, Metalmite entered vehicle leases with Thomas for the following vehicles owned by Thomas (collectively, the "Vehicle Leases"):

- 8/23/2021: Vehicle Lease–1998 Chevy Flatbed;
- 8/23/2021: Vehicle Lease–2012 Gray Transit Connect; and
- 8/23/2021: Vehicle Lease–2017 White Transit 250 Van

ii. Metalmite continues to utilize the foregoing vehicles in its business operations. Metalmite hereby assumes the Vehicle Leases. Metalmite shall continue to maintain the foregoing vehicles in proper condition and shall maintain insurance on the foregoing vehicles pursuant to the terms of the Vehicle Leases.

7. The following is added to the end of Section 1.6.5 of the Plan:

As set forth section 1.6.1.1 of the Plan, Thomas R. Gendich, individually, or together with Ann Marie Gendich, as applicable, have the following personal guarantees of Debtor's obligations (collectively the "Metalmite Guarantees"):

i. Oxford Guaranty I. Unconditional Guarantees dated March 18, 2021, executed by Thomas R. Gendich and Ann Marie Gendich in favor of Oxford, guaranteeing Metalmite's repayment of the Oxford Loan I obligations in the original principal amount of $1,556,000.00.

ii. Oxford Guaranty II. Continuing Guaranty Agreement dated March 18, 2021, executed by Thomas R. Gendich and Ann Marie Gendich in favor of Oxford, guaranteeing Metalmite's repayment of the Oxford Loan II obligations in the original principal amount of $350,000.00.

iii. American Express credit cards:

a. ending in 1006 in the approximate amount of $53,665.32, guaranteed by Thomas R. Gendich only.

b. ending in 1007 in the approximate amount of $27,634.00, guaranteed by Thomas R. Gendich only.

c. American Express cards identified in proof of claims 11 – 15 in the approximate total amount of $157,704.69, guaranteed by Thomas R. Gendich only.

iv. Chase Visa credit cards:

a. ending in 3816 in the approximate amount of $33,500.20, guaranteed by Thomas R. Gendich only.

b. ending in 8308 in the approximate amount of $35,669.98, guaranteed by Thomas R. Gendich only.

v. Leaf Capital in the approximate amount of $140,000.00, guaranteed by Thomas R. Gendich only.

vi. UniFi in the approximate amount of $27,133.13, guaranteed by Thomas R. Gendich only.

vii. U.S. Bank Equipment Finance in the approximate amount of $111,166.24, guaranteed by Thomas R. Gendich only.

viii. Complete Capital, in an unknown amount, guaranteed by Thomas R. Gendich only.

ix. Wells Fargo Equipment Finance, Inc. ("Wells Fargo") in an unknown amount, guaranteed by Thomas R. Gendich only.

8. New paragraph 1.6.6 is added to the Plan as follows:

**The Automation Alley Agreement:**

i. On November 19, 2020, Metalmite entered into a Grant Agreement with Automation Alley, a Michigan not for profit corporation ("Grant Agreement"), and was awarded use of a Markforged 3-Metal X, 1 Sinter 2 and 1-Wash Station Print Farm Serial Numbers; Stainless steel material and other metal samples; User access to icube Training System; and 14.0 Assessment Findings Report ("Grant Award").

ii. Metalmite, as Grantee, took possession of the equipment and unused material described in the Grant Award, subject to conditions in the Grant Agreement.

iii. The Grant Agreement expired on November 20, 2023. However, the Grant Agreement permits Metalmite to retain possession and use of the items included in Grant Award provided that Metalmite agrees to surrender or return said items in the event it sells its assets or no longer uses the items included in the Grant Award.

iv. Metalmite continues to use the items included in the Grant

> Award. Automation Alley has agreed to allow Metalmite to continue to use the items included in the Grant Award, and Metalmite has agreed to surrender the items included in the Grant Award in the event that Metalmite sells its assets or no longer uses the items included in the Grant Award.

9. The last sentence of the second paragraph of section 1.8.1 of the Plan is deleted and replaced with the following:

> The final hearing was cancelled and an Order (I) Deeming the Interim Order to Be a Final Order (A) Authorizing Debtor in Possession to Obtain Postpetition Secured Financing; (B) Granting Priming Liens; (C) Authorizing Use of Cash Collateral and Granting Adequate Protection; and (D) Modifying the Automatic Stay, and (II) Cancelling Hearing Scheduled for February 9, 2024, was entered (ECF No. 71).

10. The compromise of the preference claim asserted by Thomas Gendich and Ann Marie Gendich (case no. 24-40118-lsg) as set forth in paragraph 1.8.3 of the Plan is hereby approved.

11. New section 1.8.5 is added to the Plan as follows:

> There have been no post-petition transfers outside the ordinary course of business.

12. Section 1.9.2 of the Plan is deleted and replaced with the following:

The Debtor is not aware of any preferential transfers pursuant to 11 U.S.C. § 547 within one year of the Petition Date or fraudulent transfers to the Debtor's insiders during the six years prior to the Petition Date.

13. Section 3.1.1 of the Plan is amended to add the following at the conclusion of the first paragraph:

The Gendich Preference claim in the amount of $30,000.00 is a Group I claim and will be paid on or before the Effective Date.

14. New paragraph 3.1.2.6 is added to the Plan as follows:

The discharge issued in this case shall not discharge the Debtor from its guarantee of the Real Estate Financing Obligations of Thomas and Ann Marie Gendich owed to Oxford Bank as set forth in paragraph 1.6.5 of the Plan.

15. Section 3.2.1.2 of the Plan is deleted and replaced with the following:

The Class I claim shall receive interest at the rate of 8.5% per annum.

16. The first paragraph of Article IV – Executory Contract Claims of the Plan is deleted and replaced with the following:

The Debtor hereby assumes the Wells Fargo Lease Agreement, and the Vehicle Leases. An order authorizing the Debtor to assume the lease with Thomas and Ann Marie Gendich for the commercial property located at 194 S. Elizabeth Street, Rochester, Michigan 48306, was entered on May 7, 2024 (ECF No. 115). Except as otherwise set forth

in the Plan or the Confirmation Order, all other executory contracts not previously assumed or rejected are rejected.

17. The second sentence of section 7.1 of the Plan is deleted and replaced with the following:

> Except as otherwise provided in the Plan or the Confirmation Order, pursuant to section 1141(d)(1) confirmation shall, as of the Effective Date, discharge the Debtor from all Claims or other debts that arose before the Effective Date.

18. The heading to section 7.2 of the Plan is deleted and replaced with the following: Discharge under 1191(b).

19. The first sentence of section 7.2 of the Plan is deleted and replaced with the following:

> In the event this Plan is confirmed under 1191(b) of the Bankruptcy Code, as soon as practicable after completion of the Debtor's Payments, the Court shall grant the Debtor a discharge of all debts as provided in section 1192 of the Bankruptcy Code ("Discharge Order").

20. The first sentence of paragraph 7.3 of the Plan is deleted and replaced with the following:

> Upon the Effective Date if the Plan is confirmed under section 1191(a) or upon entry of a Discharge Order if the Plan is confirmed under section 1191(b), and except as otherwise provided in the Plan or the

Confirmation Order, all Persons and Entities shall be precluded from asserting against the Debtor any other or further Claims, demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

21. Section 12.3 of the Plan is stricken and replaced with the following:

Subject to paragraph 26 of the Confirmation Order, the Debtor is not aware of any set-off pursuant to section 553 it may have against any Allowed Claim.

22. Section 13.1 and 13.2 of the Plan are deleted and replaced with the following:

The Debtor may modify the Plan to the extent permitted in 11 U.S.C. § 1193.

23. Section 16.1 of the Plan is deleted and replaced with the following:

The Court set a deadline of May 7, 2024, as the bar date for non-governmental proofs of claim to be filed with the Court. Governmental units were to file proofs of claim on or before August 5, 2024. Except as otherwise set forth in this Plan as an Allowed Claim, the Debtor and Reorganized Debtor may object to the allowance of any Claim (whether listed on the schedules filed by Debtor or filed by any Creditor) on or before the later of (a) sixty (60) days from the date of service of any

Proof of Claim upon the Debtor or Reorganized Debtor, or, (b) sixty (60) days after the Effective Date.

24. Sections 17.1 and 17.2 of the Plan are deleted and replaced with the following:

**17.1** Other than as set forth in paragraph 17.2, upon the failure of the Debtor to make any payment due under this Plan which failure is not cured within sixty (60) days of the mailing of a written notice of default to the Debtor and Debtor's counsel, such Creditor may seek appropriate relief from a court of competent jurisdiction.

**17.2** Upon the failure of the Debtor to make any payment due under this Plan to Oxford Bank, which failure is not cured within fifteen (15) days of the mailing of written notice of default to the Debtor and Debtor's counsel, Oxford Bank may seek relief from a court of competent jurisdiction.

24. "Fed. R. Bankr. P. 2022" is deleted in section 18.2 of the Plan and replaced with "Fed. R. Bankr. P. 2016."

25. The automatic stay is hereby lifted to allow Onodi Tool and Engineering Company to effectuate its offset as set forth in section 1.8.4 of the Plan.

26. Section 18.7 of the Plan is modified to add the following after the end of the first sentence:

Upon entry of the Confirmation Order, Ms. Reed will be removed as the chief restructuring officer. Ms. Reed will continue to consult with the Debtor on an uncompensated as needed basis.

27. The Debtor is authorized to execute all documents required to effectuate the provisions of the Plan or this Order.

28. The Debtor will file, in accordance with Fed.R.Bankr.P. 2015(a), post-confirmation monthly operating reports no later than twenty (20) days subsequent to the end of each month and serve copies on the United States Trustee and the Subchapter V Trustee, until the Court enters an Order closing, dismissing or converting the case.

29. Pursuant to 11 U.S.C. § 1183(c)(2), the Debtor shall file with the Court a Notice of Substantial Consummation within 14 days after the Plan has been substantially consummated.

30. The Debtor and the Subchapter V Trustee will file a joint stipulation for entry of an order discharging the Subchapter V Trustee after the Notice of Substantial Consummation is filed.

31. The Debtor's case will remain open until (i) the Subchapter V Trustee files his final report, and (ii) the Court enters an order discharging the trusteeship and terminating the Subchapter V Trustee's appointment.

32. All professional fee applications shall be filed within thirty (30) days of the entry of this Order.

33. The failure of this Order to reference or address all or part of any particular provision of the Plan has no effect on the validity, binding effect or enforceability of such provision and such provision has the same validity, binding effect and enforceability as every other provision in the Plan. In the event of any inconsistencies between the terms of the Plan and this Order, the terms of this Order shall control.

34. In the event of a conversion of this case to a Chapter 7 proceeding, all property of the Debtor or Reorganized Debtor or any successor to the Debtor, including property which will revest in the Reorganized Debtor pursuant to confirmation of this Plan, and all property acquired by the Reorganized Debtor subsequent to confirmation, shall be property of the Chapter 7 estate.

**Signed on October 17, 2024**

**/s/ Lisa S. Gretchko**

**Lisa S. Gretchko**
**United States Bankruptcy Judge**